Opinion by Judge BERNARD.
¶ 1 The Colorado Sex Offender Lifetime Supervision Act (the Act), §§ 18-1.3-1001 to - 1012, C.R.S.2012, establishes indeterminate sentencing for certain felony sex offenses. Under the Act, an offender must be sentenced to an indeterminate sentence, *38 which consists of a bottom end of a definite number of years and a top end of the offender's natural life.
¶ 2 This appeal presents a series of questions about one aspect of this sentencing scheme. What is the sentencing range for the bottom end when the sex offense is also a crime of violence under section 18-1.3-406, C.R.S.2012? Is the bottom end for such an offense automatically subject to the same aggravated sentencing range as other crimes of violence? Or must the prosecution prove additional aggravating circumstances to support a trial court's decision to impose a bottom end in the aggravated sentencing range?
¶ 3 These questions arose in the context of a postconviction court's decision to grant a Crim. P. 35(a) motion to correct an illegal sentence. The motion was filed by defendant, William J. Hunsaker, who had been convicted of two sexual offenses that were subject to indeterminate sentencing under the Act.
¶ 4 To answer those questions, we first recognize that some parameters of the bottom end have been considered by our supreme court in Vensor v. People, 151 P.3d 1274, 1279 (Colo.2007), and by a division of this court in People v. Tillery, 231 P.3d 36, 50 (Colo.App.2009), aff'd sub nom. People v. Simon, 266 P.3d 1099 (Colo.2011). In each case, the appellate court struck down a sentence containing a bottom end that exceeded twice the maximum of the presumptive sentencing range. In Vensor, the court held that the bottom end must be
not less than the minimum nor more than twice the maximum of the presumptive range authorized for the class of felony of which the defendant stands convicted. As with other class two, three, and four felonies, the sentencing court must consider the existence of aggravating and mitigating circumstances surrounding the offense and the offender in choosing a particular term within the presumptive range. Although the Act expressly forbids a sentence with a lower term that is less than the minimum of the presumptive range, it does not preclude the lower term of the defendant's indeterminate sentence from exceeding the presumptive range as the result of extraordinary aggravating circumstances.
151 P.3d at 1279-80 (emphasis added). However, Vensor did not involve crimes of violence.
¶ 5 The division in Tillery considered a sentence imposed for the same offense at issue in this case-sexual assault on a child as part of a pattern of sexual abuse. The division held that the bottom end must fall between the midpoint in, and twice the maximum of, the presumptive range for a class three felony-or eight to twenty-four years. However, the division did not address the specific question raised here: whether proof of aggravating circumstances is a necessary prerequisite to imposing a bottom end above the maximum of the presumptive range.
¶ 6 We conclude, for the reasons we explain below, that the prosecution is not required to prove aggravating factors before a court can impose a bottom end above the maximum of the presumptive range for the class three felony offense of sexual assault on a child as part of a pattern of abuse. Therefore, (1) we agree with the position of the prosecution, which brought this appeal; and (2) we reverse the postconviction court's order and remand with directions.
I. Background
¶ 7 A jury convicted defendant of one count of sexual assault of a child, a class four felony, and one count of sexual assault of a child as part of a pattern of sexual abuse, a class three felony. See § 18-3-405(1), (2)(d), C.R.S.2012. On the first count, the trial court sentenced him to an indeterminate term of eight years to life imprisonment. On the second count, the trial court imposed an indeterminate sentence of sixteen years to life imprisonment. The maximum of the presumptive sentencing range for class four and class three felonies is six years and twelve years, respectively. § 18-1.3-401(1)(a)(V)(A), C.R.S.2012.
¶ 8 Defendant filed a Crim. P. 35(a) postconviction motion. He argued that his sentences were illegal because the bottom end of each sentence improperly exceeded the maximum of the presumptive sentencing range *39 for the respective class of felony. He contended that such bottom ends could only be imposed if the trial court expressly found that there were aggravating factors that supported a bottom end in the aggravated range.
¶ 9 The prosecution conceded that the bottom end on the first count-the class four felony-was improper. However, the prosecution argued that the bottom end on the second count-the class three felony-was proper. It was proper, according to the prosecution, because the class three felony was automatically subject to a bottom end in the aggravated range because it was per se a crime of violence. See § 18-3-405(3), C.R.S.2012.
¶ 10 A second judge (the postconviction court) heard the postconviction motion. The postconviction court reduced the bottom end for both convictions to the maximum of the presumptive sentencing range for the respective class of felony, namely, six and twelve years.
II. Analysis
A. The Appeal Is Properly Before Us
1. The Appeal Is Timely
¶ 11 Defendant contends that this appeal is untimely. We disagree.
¶ 12 At all times relevant to this appeal, C.A.R. 4(b)(2) provided that a notice of appeal by the prosecution in a criminal case must be filed within forty-five days after the entry of the order being appealed. (The filing period has since been extended to forty-nine days.) A notice of appeal following resentencing must be filed within forty-five days from the date of the imposition of sentence. People v. Retallack, 804 P.2d 279 (Colo.App.1990) (citing C.A.R. 4(c)(1)(II)(A) ).
¶ 13 On June 6, 2011, the postconviction court issued an order granting defendant's Crim. P. 35(a) motion and reducing his sentence. Assuming that this order was final for purposes of appeal, and that the prosecution's subsequent motion to reconsider the June 6 order did not enlarge the time for filing an appeal, the prosecution's notice of appeal would have been due forty-five days later on July 21, 2011.
¶ 14 However, on July 19, 2011, the postconviction court vacated the sentence imposed in the June 6 order. The court held that it had been improper to impose new sentences without a hearing, and set a resentencing hearing for September 19, 2011. Thus, because no sentence had been imposed, the July 21 deadline no longer applied.
¶ 15 The postconviction court imposed new sentences on September 19, 2011. The deadline for appealing the new sentences was forty-five days later, on November 3, 2011. Therefore, the notice of appeal filed by the prosecution on October 26, 2011, was timely.
2. The Prosecution May Appeal a Postconviction Order Modifying a Sentence
¶ 16 Defendant contends that the prosecution may not challenge the postconviction court's order because the new sentence falls within the range permitted by law. We disagree.
¶ 17 "The prosecution may appeal any decision of a court in a criminal case upon any question of law." § 16-12-102(1), C.R.S.2012. Divisions of this court have disagreed on the question whether the prosecution may employ Crim. P. 35(a) to challenge a sentence. Compare, e.g., People v. White, 179 P.3d 58 (Colo.App.2007), with People v. Heredia, 122 P.3d 1041 (Colo.App.2005).
¶ 18 Here, however, the prosecution has appealed the postconviction court's ruling on defendant's Crim. P. 35(a) motion. Such an appeal falls squarely within the ambit of section 16-12-102(1). Cf. Heredia, 122 P.3d at 1045-46 (where trial court granted defendant's Crim. P. 35(c) motion and reduced his sentence, prosecution's Crim. P. 35(a) motion challenging new legal sentence was improper, but prosecution could properly have filed a direct appeal of the postconviction order). We therefore conclude that the prosecution's appeal is proper.
3. Resentencing on One Conviction Did Not Entitle Defendant to Resentencing on the Other Conviction
¶ 19 It is undisputed that the original sentence imposed for the first count (sexual *40 assault of a child, a class four felony) was illegal. Relying on Leyva v. People, 184 P.3d 48, 49 (Colo.2008), defendant contends that this rendered the entire sentence illegal, thereby entitling him to resentencing on both counts. He further argues that, because the sentence ultimately imposed on the second count was within legal limits, it is not subject to appeal by the prosecution. We disagree.
¶ 20 In Leyva, our supreme court considered the effect of the correction of an illegal sentence on the deadline for bringing a collateral attack regarding the original judgment of conviction. 184 P.3d at 49. The court held that, for purposes of determining the finality of a judgment, if the
original judgment of conviction contained an illegal sentence on one count, the entire sentence was illegal. The sentence was therefore subject to correction and the judgment of conviction was subject to amendment, such that the judgment of conviction was not final or fully valid.
Id.
¶ 21 We therefore conclude that Leyva does not support defendant's contention that the illegal sentence on one count entitled him to resentencing on both counts.
¶ 22 Rather, if a "sentencing court imposes a definite sentence in excess of the statutory maximum, the sentence can be corrected by removing that excess." Delgado v. People, 105 P.3d 634, 637 (Colo.2005) (citing Abeyta v. People, 112 Colo. 49, 51-52, 145 P.2d 884, 885 (1944) ). Thus, correction of the illegal sentence on the first count did not implicate the sentence on the second count.
¶ 23 As a result, the postconviction court's order is subject to the prosecution's appeal.
B. The Original Sentence on the Class Three Felony Was Legal
¶ 24 The prosecution contends that the postconviction court erred by vacating defendant's original sentence of sixteen years to life imprisonment on the conviction for sexual assault of a child as part of a pattern of abuse. We agree.
1. Standard of Review and Principles of Statutory Construction
¶ 25 We review a trial court's sentencing decision for abuse of discretion. People v. Robinson, 187 P.3d 1166, 1177 (Colo.App.2008). "A trial court necessarily abuses its discretion where it misconstrues or misapplies the law." Id.
¶ 26 Statutory interpretation is a question of law that we review de novo. People v. Garcia, 113 P.3d 775, 780 (Colo.2005). "We must adopt the statutory construction that 'best effectuates the intent of the General Assembly and the purposes of the legislative scheme.' " Tillery, 231 P.3d at 50 (quoting State v. Nieto, 993 P.2d 493, 501 (Colo.2000) ). "If the statutory language is clear and unambiguous, we do not engage in further statutory analysis and apply the statute as written." People v. Vecellio, 2012 COA 40, ¶ 14. However, when the language is reasonably susceptible of multiple interpretations, we may consider external sources, such as legislative history, to arrive at the proper meaning. Rickstrew v. People, 822 P.2d 505, 509 (Colo.1991) ; Tillery, 231 P.3d at 50.
¶ 27 When two statutes appear to conflict, we must strive to construe them in a manner that gives effect to both while resolving the inconsistency. People v. Saucedo, 796 P.2d 11, 12 (Colo.App.1990). Likewise, "[i]f a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both." § 2-4-205, C.R.S.2012. If conflicting provisions cannot be reconciled, the special provision generally controls. Id. (general provision prevails only if adopted later with manifest intent to override special provision); see also Zamarripa v. Q & T Food Stores, Inc., 929 P.2d 1332, 1339 (Colo.1997) ( "notwithstanding" reference to general statute in special statute did not mean general policy could not be applied; rather, special statute created exception to general policy where statutes conflicted).
2. The Violent Crime Sentencing Statute Is Ambiguous Regarding Sex Offenses
¶ 28 Section 18-3-405(2)(d) provides that sex assault on a child is a class three felony if the offense is committed as part of a *41 pattern of sexual abuse. Section 18-3-405(3) further provides that if a defendant is convicted of such an offense, "the court shall sentence the defendant in accordance with the provisions of section 18-1.3-406."
¶ 29 Section 18-1.3-406 is entitled "Mandatory sentences for violent crimes." Subsection (1)(a) provides that a person convicted of a crime of violence shall be sentenced for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range for the offense.
¶ 30 Subsection (1)(b) provides:
Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense ... that constitutes a crime of violence shall be sentenced to the department of corrections for an indeterminate term of incarceration of at least the midpoint in the presumptive range specified in section 18-1.3-401(1)(a)(V)(A) up to a maximum of the person's natural life, as provided in section 18-1.3-1004(1).
¶ 31 Defendant contends that subsection (1)(b) authorizes a bottom end between the midpoint in, and the maximum of, the presumptive sentencing range. He argues that a bottom end in excess of the presumptive maximum is not authorized by section 18-1.3-406(1)(b) without a finding of aggravating circumstances under section 18-1.3-401(8), C.R.S.2012.
¶ 32 The prosecution contends that subsection (1)(b) authorizes a bottom end under the same standard defined by subsection (1)(a) for non-sex offenses-between the midpoint in, and twice the maximum of, the presumptive range.
¶ 33 Because the statutory language is susceptible of either of these reasonable interpretations, we conclude, as did the division in Tillery, that it is ambiguous. Tillery, 231 P.3d at 50. Thus, in addition to the statutory language, we may consider external sources to aid our interpretation. Id.
3. Evolution of Sex Offender Sentencing and Lifetime Supervision
¶ 34 Before November 1998, a sex offense that was also a crime of violence was subject to the same sentencing range as any other crime of violence. At that time, crime of violence sentencing was addressed by former section 16-11-309. Subsection (1)(a) of the former statute was substantially similar to the current section 18-1.3-406(1)(a). The statute did not differentiate between crimes of violence that involved sex offenses and those that did not.
¶ 35 However, certain sex offenses were classified as per se crimes of violence subject to sentencing under former section 16-11-309. For example, section 18-3-405 provided that any sentence for sex assault on a child as part of a pattern of abuse must be "in accordance with the provisions of section 16-11-309." Ch. 240, sec. 11, § 18-3-405(3), 1995 Colo. Sess. Laws 1252. Thus, a person convicted of that offense was subject to a mandatory sentencing range of at least the midpoint in, but not more than twice the maximum of, the presumptive range for a class three felony.
¶ 36 The General Assembly passed the Act in 1998. It established indeterminate sentencing for certain sex offenses. The legislature declared its purpose for doing so:
The general assembly hereby finds that the majority of persons who commit sex offenses, if incarcerated or supervised without treatment, will continue to present a danger to the public when released from incarceration and supervision. The general assembly also finds that keeping all sex offenders in lifetime incarceration imposes an unacceptably high cost in both state dollars and loss of human potential. The general assembly further finds that some sex offenders respond well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision. The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state.
§ 18-1.3-1001, C.R.S.2012. As recognized by our supreme court in Vensor, 151 P.3d at 1278, this "declaration of purpose makes *42 clear the legislature's intent to provide for treatment and extended supervision" of sex offenders, rather than to punish them differently from other felons of the same class.
¶ 37 The Act applies to sex offenses committed on or after November 1, 1998. In conjunction with its passage, the legislature also amended former section 16-11-309(1) to add the following subsection:
(c) Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense ... committed on or after November 1, 1998, that constitutes a crime of violence shall be sentenced to an indeterminate term of incarceration of at least the midpoint in the presumptive range up to a maximum of the person's natural life, as provided in section 16-13-804(1) [later codified at section 18-1.3-1004(1) ].
Ch. 303, sec. 9, § 16-11-309(1)(c), 1998 Colo. Sess. Laws 1291 (now codified with amendments at § 18-1.3-406(1)(b) ).
¶ 38 Reading this amendment together with the Act and the legislature's declaration of purpose, we conclude that the legislature intended to add lifetime supervision to sex offender sentencing without changing the underlying sentencing scheme. See also Vensor, 151 P.3d at 1279 (during legislative hearings, the Act's sponsor "emphasized three separate times that the Act was not intended to change the sentencing guidelines already in place under Colorado law" and "would simply change a court's ability to monitor sex offenders by subjecting them to lifetime supervision in the form of probation and parole")(emphasis in original).
¶ 39 We therefore conclude that the bottom end of an indeterminate sentence for a sex offense that is also a crime of violence is intended to be imposed in the same manner and within the same strictures as a determinate sentence prescribed for any crime of violence-specifically, between the midpoint in, and twice the maximum of, the presumptive range for the applicable felony class. See id. at 1278 (bottom end of indeterminate sentence "was intended to be imposed in the same manner and within the strictures of a determinate sentence"); Tillery, 231 P.3d at 50 (bottom end of an indeterminate sentence for sexual assault on a child as part of a pattern of abuse must be between the midpoint and twice the maximum of the presumptive range).
¶ 40 As a result, the prosecution need not establish aggravating circumstances to support sentencing above the maximum of the presumptive range for a sex offense that is a crime of violence. See § 18-1.3-401(8)(a)(I), C.R.S.2012 (conviction of a crime of violence under section 18-1.3-406 is itself an extraordinary aggravating circumstance that requires sentencing in the aggravated range).
4. Sexual Assault on a Child as Part of a Pattern of Abuse Is a Per Se Crime of Violence
¶ 41 We also reject defendant's contention that sexual assault on a child as part of a pattern of abuse is not a crime of violence.
¶ 42 When the statute defining an offense prescribes crime of violence sentencing for the offense by reference to section 18-1.3-406, the offense is called a per se crime of violence. See People v. Banks, 9 P.3d 1125, 1130 (Colo.2000). Crime of violence sentencing applies equally when (1) the defendant is convicted of a per se crime of violence, or (2) the prosecution pleads and proves the elements of a crime of violence as enumerated in section 18-1.3-406(2), C.R.S.2012. Id.
¶ 43 Here, section 18-3-405(3) expressly states that a defendant convicted of the offense of sexual assault on a child as part of a pattern of abuse shall be sentenced "in accordance with the provisions of section 18-1.3-406." Thus, this crime is a per se crime of violence. People in Interest of A.B.-B., 215 P.3d 1205, 1208-09 (Colo.App.2009) (sexual assault on a child as part of a pattern of abuse is a per se crime of violence).
C. Conclusion
¶ 44 We therefore conclude that the bottom end of an indeterminate sentence for sexual assault of a child as part of a pattern of abuse must fall between the midpoint in, and twice the maximum of, the presumptive *43 range for a class three felony-eight to twenty-four years.
¶ 45 Here, defendant was originally sentenced to a term of sixteen years to life. His sentence was legal. Thus, the postconviction court erred when it granted defendant's Crim. P. 35(a) motion on the ground that the bottom end of the original sentence was illegal.
¶ 46 The order is reversed and the case is remanded to the postconviction court. The court shall reinstate the sentence of sixteen years to life on defendant's class three felony conviction for sexual assault on a child as part of a pattern of abuse.
Judge CASEBOLT and Judge BOORAS concur.